**Leonard VARGA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. H–77–1178.**

United States District Court,
D. Maryland.

April 5, 1979.

Walter E. Carson, Washington, D. C., for plaintiff.

Robert L. Gordon, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, plaintiff is seeking a refund of federal taxes paid for the year 1973. A member of the Seventh-Day Adventist Church in Takoma Park, Maryland, plaintiff is here seeking to recover from the United States the sum of $1,137.20 in self-employment tax, including penalties and interest, which he has been required to pay.[1] This sum had been recovered by the Internal Revenue Service through a levy on plaintiff's bank account when he refused to pay the assessment made against him for self-employment tax based on his 1973 income.

Most of the facts have been stipulated. The case came on for trial before this Court sitting without a jury, and plaintiff was the only witness to testify. The parties have filed memoranda in support of their respective positions, and this Court has heard oral argument. For the reasons hereinafter stated, this Court finds and concludes that

---

1. Plaintiff is also seeking injunctive and declaratory relief.

plaintiff is not exempt from payment of the self-employment tax in question, and that plaintiff is not therefore entitled to a refund.

# I

## The Facts

Plaintiff, who immigrated to the United States in 1956, is a native of Hungary and became a naturalized citizen of the United States in 1971. A long-time member of the Seventh-Day Adventist Church, plaintiff testified that his primary reason for coming to the United States was to obtain religious freedom. Plaintiff is not, however, a duly ordained or licensed minister of his Church, nor did he earn any income in 1973 as a result of services performed as a minister, member or practitioner of his Church.

Plaintiff has been self-employed for a number of years as a dental technician. Until 1973, plaintiff had paid the self-employment tax imposed by § 1401 of the Internal Revenue Code of 1954 (hereinafter "the Code") without objection. On his income tax return for 1973, however, plaintiff refused to pay a self-employment tax on the ground that to do so would violate his religious beliefs. The Internal Revenue Service then assessed against plaintiff a self-employment tax in the amount of $864.00, based upon plaintiff's adjusted gross income of $13,980.83. By levy on plaintiff's savings bank account, this sum, plus penalties and interest, was recovered by the Internal Revenue Service.

In January 1977 and again in September 1977, plaintiff filed on Internal Revenue Form 4029 an application for exemption from the tax on self-employment income and for waiver of benefits. The Secretary of Health, Education and Welfare subsequently determined that plaintiff was not a member of a religious sect or division which

met the requirements imposed either by § 1402(g)(1)(C)[2] or by § 1402(g)(1)(D)[3] of the Internal Revenue Code. Accordingly, the Secretary denied plaintiff's application, concluding that he had failed to meet the requirements of § 1402(g) of the Code.

Plaintiff concedes that he is not a member of a religious sect or division which has the established tenets or teachings referred to in § 1402(g)(1)(C) of the Code. He further concedes that he is not a member of a religious sect or division which makes provision for its dependent members, as set forth in § 1402(g)(1)(D) of the Code. However, it is plaintiff's personal religious beliefs, based upon his reading of the Bible and the teachings of one Ellen White (a prophet of the Seventh-Day Adventist Church)[4] that he may not accept the benefits of any private or public health or life insurance program, including Social Security benefits, and that he may not pay for such benefits. Defendant does not in this case dispute the sincerity of plaintiff's beliefs, and this Court concludes that plaintiff is indeed sincere in his personal convictions and beliefs.

# II

## The Applicable Law

Plaintiff asserts that this Court should construe the statutory exemptions from the tax on self-employment income in such a manner as to apply to him. The self-employment tax was imposed by the Self-Employment Contributions Act of 1954, 26 U.S.C. § 1401, which provides in pertinent part as follows:

(a) Old-age, survivors, and disability insurance.—In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax * * *.

Members of certain religious faiths, however, are exempted from payment of the

---

**2.** § 1402(g)(1)(C) provides for an exemption if the Secretary finds that the religious sect or division has certain established tenets or teachings.

**3.** § 1402(g)(1)(D) provides for an exemption if the Secretary finds that it is and has been the

practice for members of a sect to make provision for their dependent members which would be reasonable in view of their general level of living.

**4.** Ms. White's teachings are not established tenets of the Seventh-Day Adventist Church.

tax imposed by § 1401. This exemption is created by § 1402(g), which provides:

(1) Exemption.—Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by—

(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and

(B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,

and only if the Secretary of Health, Education, and Welfare finds that—

(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and

(E) such sect or division thereof has been in existence at all times since December 31, 1950.

Plaintiff contends that this statute should be interpreted to grant an exemption to an individual who holds a personal conviction based on his religious beliefs which would not permit him to accept Social Security or other insurance benefits. Plaintiff argues that if this Court does not adopt such a construction, then § 1402(g) of the Code would violate the Establishment Clause of the First Amendment and § 1401 would violate the Free Exercise Clause of the First Amendment.

## III

### Discussion

■ From a careful reading of the statutory language in the light of its legislative history, this Court concludes that the interpretation sought by plaintiff is not warranted. It is a well settled rule of statutory construction that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, * * * the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The language of § 1402(g) is clear and unambiguous. In order for a person to be exempt from the tax on self-employment income, he must be "a member of a recognized religious sect or division thereof and [be] an adherent of *established* tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance." (Emphasis added.) The meaning of the statute is therefore plain. The exemption is available only to those members of religious sects which have established tenets or teachings prohibiting the acceptance of Social Security or other insurance benefits. The statute clearly does not allow an exemption based solely upon an individual belief, albeit a conscientious and sincerely held one.

The legislative history of § 1402(g) conclusively demonstrates that Congress did not intend the exemption in question to be based upon an individual's religious beliefs. In fact, Congress clearly intended the opposite, namely, that the exemption should not be based upon individual beliefs. § 1402(g) was added by § 319 of the Social Security Amendments of 1965, Pub.Law 89–97, 79 Stat. 286, 391.[5] The Committee Reports of both Houses indicate that Congress passed the measure reluctantly, primarily because religious sects like the Old Order Amish provided for their own needy, independent of public or private insurance programs. The report of the Senate Finance Committee included the following statement:

> The committee believes that provisions for coverage under social security on an individual voluntary basis are undesirable, and we have been reluctant to recommend an amendment which would permit an individual to elect exemption from social security coverage. Present law provides no exemption by reason of an individual's religious beliefs.

S.Rep. No. 404, 89th Cong., 1st Sess., p. 116 (1965), U.S.Code Cong. & Admin.News (1965), pp. 1943, 2056.

Plaintiff contends that such a construction of § 1402(g) would render the statute unconstitutional and that this Court should read the statutory language broadly in order to avoid constitutional issues. In support of his position, plaintiff cites *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), two cases which arose under § 6(j) of the Universal Military Training and Service Act. In those two cases, the Supreme Court interpreted in a broad manner statutory language quite different from that involved in this case, in order to avoid constitutional problems. In the pending case, however, a broad interpretation of the statutory language is not necessary to preserve the constitutionality of either § 1401 or of § 1402(g), because the plain meaning of the statutory provisions in question violates neither the Free Exercise Clause nor the Establishment Clause of the First Amendment.

In support of his constitutional claims, plaintiff first argues that the self-employment tax imposed by § 1401 violates his constitutional right to free exercise of his religious beliefs because it requires him to pay for benefits which his personal religious beliefs prohibit him from receiving. Plaintiff contends that such an economic burden upon the exercise of his religious beliefs is not constitutionally permissible under *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

It is well established that the First Amendment does not prohibit all burdens upon an individual's free exercise of religion. "[A]ny incidental burden on the free exercise of * * * religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate.'" *Sherbert v. Verner*, 374 U.S. *supra* at 403, 83 S.Ct. at 1793. In that case, a member of the Seventh-Day Adventist Church had been discharged by her South Carolina employer because she would not work on Saturday, the Sabbath day of her faith. When she was unable to obtain other employment, she filed a claim for unemployment compensation benefits under the South Carolina Unemployment Compensation Act. Her claim was denied under certain provisions of the Act. The Supreme Court found that, as applied, the South Carolina statute abridged her right to the free exercise of her religion, concluding that the State Commission had presented no sufficiently compelling state interest to justify the burden placed upon the church member's free exercise of her religion. In *Wisconsin v. Yoder, supra*, members of the Old Order Amish religion and the Conservative Amish Mennonite Church had been convicted of violating Wisconsin's compulsory school-attendance law by declining to send their children to public or private school after they had

---

**5.** The provision was originally codified as § 1402(h) and was relettered in 1976.

graduated from the eighth grade. In concluding that the convictions were invalid under the Free Exercise Clause, the Supreme Court held that the state's interest in requiring two additional years of secondary education was not sufficient to overcome the interest of the Amish in preserving the integrity of their religious community.

▌ In the pending case, however, there is a compelling governmental interest sufficient to justify any resulting incidental burden upon plaintiff's right to the free exercise of his religion. The Social Security system is designed to provide assistance to the retired and those unable to work, so that adequate provision may be made for dependent members of society. The tax on self-employment income imposed by § 1401 is an integral part of the entire system and is used to finance the various Social Security programs. This governmental interest in assuring a source of funds for the Social Security system is sufficiently compelling to justify the incidental burden placed upon plaintiff's right to the free exercise of his religion. Quite obviously, if one's personal religious beliefs were determinative, the government could hardly be assured of a continuing source of funds derived equitably from all taxpayers.

Plaintiff's reliance upon *United States v. Seeger, supra,* and *Welsh v. United States, supra,* to support a contrary conclusion is misplaced. In both of those cases, the Supreme Court considered the constitutionality of § 6(j) of the Universal Military Training and Service Act, which granted an exemption from military service to anyone who, because of religious training or belief in his relation to a Supreme Being, was conscientiously opposed to combatant military service. The Supreme Court construed the statute to include those conscientiously opposed to combatant military service on nontheistic grounds, as well as those opposed on theistic grounds. In the absence of such an interpretation, the statute would have violated the Free Exercise Clause of the First Amendment by subjecting propo-

nents of one religious faith to penalties which were not imposed upon proponents of another religious faith. *United States v. Seeger,* 380 U.S. *supra* at 188, 85 S.Ct. 850 (Douglas, J., concurring). If the statute had been construed to make a distinction between theistic and nontheistic religions, it would have been constitutionally suspect because not based upon a religiously neutral, compelling state interest. *See Welsh v. United States, supra* 398 U.S. at 358 & n.9, 90 S.Ct. 1792 (Harlan, J., concurring).

The pending case is quite different. Here, the distinctions drawn by Congress in § 1402(g) are indeed justified by a religiously neutral, compelling state interest. As the Tax Court stated in *Palmer v. Commissioner of Internal Revenue,* 52 T.C. 310, 314 (1969):

> The limitation by Congress of the exemption to members of religious sects with established tenets opposed to insurance and which made reasonable provisions for their dependent members was in keeping with the overall welfare purpose of the Social Security Act. This provision provided assurance that those qualifying for the exemption would be otherwise provided for in the event of their dependency.

Unlike the Amish, the Seventh-Day Adventist Church does not make reasonable provisions for its dependent members. Nor was plaintiff able in his testimony to suggest how he would be provided for in his old age or in the event of disability.[6] On the record here, this Court concludes that plaintiff's right to the free exercise of his religion has not been violated by either § 1401 or § 1402(g) of the Code.

▌ Petitioner's final argument that § 1402(g) violates the Establishment Clause because it favors one religion over another is also without merit. Congress created the exemption contained in § 1402(g) in order to accommodate the beliefs of certain religious groups such as the Old Order Amish. S.Rep. No. 404, 89th Cong., 1st Sess., p. 116 (1965). Not only is such an accommodation

---

6. Plaintiff has formally waived his right to receive Social Security benefits and testified that

he would "trust in the Lord" to supply his future needs.

between the funding requirements of the Social Security system and plaintiff's religious beliefs constitutionally permissible, *Zorach v. Clauson*, 343 U.S. 306, 314, 72 S.Ct. 679, 96 L.Ed. 954 (1952), but it may even be required if the particular program places a burden upon the free exercise of those religious beliefs. *Sherbert v. Verner, supra.* This Court concludes that § 1402(g) is a constitutionally acceptable accommodation between the purposes of the Social Security system and the established beliefs of certain religious sects like the Old Order Amish. As the Court stated in *Jaggard v. Commissioner of Internal Revenue*, 582 F.2d 1189, 1190 (8th Cir. 1978):

> [T]he purpose of § 1402(g) is neither the advancement nor the inhibition of religion. It represents a Congressional attempt to accommodate sincerely held religious beliefs against private and public insurance programs consistent with the overall welfare purpose of the Social Security Act. Congress could reasonably conclude that individuals on their own could not be relied upon to provide for themselves in the event of dependency, but that members of a religious sect who share these views would provide for dependent members. Although in any legislative accommodation of religion there is an inherent balancing of interests, the balance struck here was a constitutionally permissible one.

This Court would agree that when the interests involved here are balanced, there is no constitutional infirmity. Accordingly, this Court concludes that § 1402(g) does not violate the Establishment Clause of the First Amendment.[7]

For the reasons stated, judgment will be entered in favor of the defendant, with costs.

---

**7.** In any event, even if there were merit to plaintiff's argument under the Establishment Clause, he would still not be entitled to relief in this case. If § 1402(g)(1), which provides for an exemption from tax, is unconstitutional, plaintiff would still be required under § 1401(a) to pay a tax on his self-employment income.