David James **TEMPLETON** and Rachel Templeton, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 82–2760.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1983.

Decided Oct. 28, 1983.

David James Templeton, pro se.

Libero Marinelli, Jr., Atty., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before BAUER, ESCHBACH and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The appellants David and Rachel Templeton appeal the tax court's affirmance of a $227.24 deficiency assessment for unpaid self-employment taxes in 1977. On appeal, they essentially raise two issues: (1) whether they qualify for an exemption from self-employment tax under 26 U.S.C. §§ 1402(e) & (g), Internal Revenue Code; and, if not (2) whether those sections are unconstitutional. We find the appellants' arguments to be without merit and affirm the decision of the tax court.

I.

On December 31, 1976, the Templetons filed Internal Revenue Service Form 4029 ("Application for Exemption From Tax on Self-Employment Income and Waiver of Benefits") and Form 4361 ("Application for Exemption From Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners"). The IRS returned both forms to the taxpayers on February 22, 1977, because neither form had been properly completed as filed. Form 4029 had been altered by deleting the words "member of" from the printed phrase "I certify that I am and continuously have

been a member of _____ (name of religious group), . . . ." Form 4361 was incomplete in that it: (1) failed to designate the qualifying category under § 1402(e)[1], i.e., the Templetons failed or refused to check the appropriate box to indicate whether they were ordained ministers, priests, rabbis; members of a religious order; commissioned or licensed ministers; or Christian Science practitioners; (2) failed to state the date on which they were ordained or licensed; (3) failed to name the denomination or religious order to which they belonged; and (4) failed to set forth the first two calendar years following 1954 in which they had self-employment income of $400.00 or more some part of which was for services as a minister, priest, rabbi, etc. The IRS also informed the Templetons that they would have to file separate forms if they both wished to be considered for exemption.

A week later, on March 1, 1977, Mr. Templeton submitted a revised set of Forms 4029 and 4361. This time Form 4029 was modified to delete the words "private or" from the printed phrase "I am conscientiously opposed to accepting benefits of any *private or* public insurance which makes payments in the event of death, disability, old-age *or* retirement . . . ." In addition, Form 4361 again failed to state the first two years after 1954 in which Mr. Templeton had self-employment earnings equal to or exceeding $400.00. This revised Form 4361 did, however, report that Mr. Templeton was ordained or licensed in 1940, and was a member of the denomination or religious order of "Bible Believing Christian[s]." On March 21, 1977, the IRS notified Mr. Templeton that both applications

for exemption from self-employment tax had been rejected. The 4029 application was rejected because it failed to meet the requirements of § 1402(h) (now § 1402(g)) because the form had been modified. The 4361 application was rejected because it was not timely filed.

On June 29, 1977, Mr. and Mrs. Templeton jointly submitted a third 4029 application. This time the taxpayers altered the form by striking the words "application for" and inserting therein the words "notice of." As in the March 1, 1977, application, the words "private or" were deleted. In this latter application, however, the word "taxpayer" was also stricken from the printed phrase "name of taxpayer." On August 4, 1977, the IRS notified the Templetons that it would not process this renewed application because it had previously received a Form 4029 application, which had been disapproved because the form had been modified.

During 1977, the Templetons received net self-employment income of $2,876.42 which they reported on their 1977 tax return. They did not, however, pay any self-employment tax on this amount. The Commissioner of the IRS sent the Templetons a statutory notice of deficiency in the amount of $227.24. The taxpayers unsuccessfully sought a redetermination of that assessment in federal tax court. From the tax court's decision the taxpayers appeal.

## II.

The first issue is whether the trial court erred in holding that the Templetons failed to qualify for an exemption under either §§ 1402(e)[2] or (g)[3]. It is well estab-

---

**1.** All section references are to the Internal Revenue Code of 1954, 26 U.S.C., as amended, unless otherwise indicated.

**2.** Section 1402(e) provides in relevant part:

"(e) Ministers, members of religious orders, and Christian Science practitioners.—

(1) Exemption.—Any individual who is (A) a duly ordained, commissioned, or licensed minister of a church or a member of a religious order (other than a member of a religious order who has taken a vow of poverty as a member of such order) or (B) a Christian

Science practitioner, upon filing an application (in such form and manner, and with such official, as may be prescribed by regulations made under this chapter) together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or

**3.** See note 3 on page 1411.

lished that exemptions and deductions are not matters of right but rather are granted by "legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). *See also Kirk v. C.I.R.,* 425 F.2d 492, 494 (D.C.Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 53, 27 L.Ed.2d 91 (1970). The taxpayer has the burden of proving that he qualifies for an exemption from taxation under the Internal Revenue Code. *See* Tax Court Rule 142(a); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *New Colonial Co.,* 292 U.S. at 440, 54 S.Ct. at 790 (1934); and *Potts, Davis & Company v. C.I.R.,* 431 F.2d 1222, 1224 (9th Cir.1970). "This burden on the taxpayer is accompanied by the presumption that the determinations of the Commissioner are correct." *Potts,* 431 F.2d at 1224 (footnote omitted); *Welch,* 290 U.S. at 115, 54 S.Ct. at 9. An examination of the record in light of the requirements of §§ 1402(e) and (g) clearly demonstrates that the Templetons failed to establish that they qualify for an exemption under either provision.

■ Section 1402(e) only exempts self-employment income from tax "imposed by this chapter *with respect to services performed by him [the taxpayer] as such minister, member, or practitioner.*" Thus, only that portion of self-employment income received for services performed as a minister, etc., is exempt under § 1402(e). The Templetons have not demonstrated that the self-employment income in question, some $2,876.42, was in fact income received exclusively from the performance of pastoral services. The stipulation of evidence provided to the tax court established that the self-employment income in question consisted of $5,113.08 obtained from the operation of "The Sewing Center", a loss of $2,509.66 from "Temple Enterprises" and $273.00 in income from "Carnegie International Corp." The record is devoid of evidence demonstrating that any of the $2,876.42 in self-employment income was derived from the practice of a religious ministry. Therefore,

retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act), shall receive an exemption from the tax imposed by this chapter with respect to services performed by him as such minister, member, or practitioner...."

3. Section 1402(g) provides in relevant part:
"(g) Members of certain religious faiths.—
(1) Exemption.—Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemptions may be granted only if the application contains or is accompanied by—

(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and

(B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,

and only if the Secretary of Health, Education and Welfare finds that—

(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and
(E) such sect or division thereof has been in existence at all times since December 31, 1950."

we hold that the Templetons fail to qualify for an exemption under § 1402(e).

■ The result is the same under § 1402(g). That section provides an exemption only if the:

"Secretary of Health, Education, and Welfare finds that . . . it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living . . . ."

The taxpayers have failed to furnish any evidence (detailed or otherwise) establishing that their church, "Bible Believing Christians," actually makes provisions for its dependent members, i.e., they have failed to provide any specific information regarding the facilities and benefits provided by their church on behalf of its dependent members. Absent such documented information in the record, the taxpayers have not sustained their burden of proving that they qualified for an exemption under § 1402(g).[4] *See Jackson v. Commissioner,* 39 T.C.M. 805 (1979); and *Henson v. Commissioner,* 66 T.C. 835 (1976).

### III.

■ The taxpayers next contend that §§ 1402(e) and (g) violate both the Establishment and the Free Exercise Clauses of the First Amendment. We do not pass on the merits of these claims because we hold that the Templetons are without standing to assert them. If we found that §§ 1402(e) and (g) violated the First Amendment, those exemptions would be entirely void. The Templetons, however, seek to be excluded from self-employment tax under those sections. Obviously, this court is without the authority to grant the remedy they seek since those exemptions would no longer be valid if they violated the First Amendment. As the Supreme Court stated in *Valley Forge College v. Americans United,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), "at an irreducible minimum, Art. III requires the party who invokes the court's authority to [show that his] injury . . . 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976)." *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758 (footnote omitted). Because the Templetons cannot fall within the exemptions provided in §§ 1402(e) and (g) if those sections are held unconstitutional under the First Amendment, the Templetons alleged injury cannot be redressed by a favorable decision and they therefore lack standing to assert these claims. *Accord Ward v. C.I.R.,* 608 F.2d 599 (5th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 272 (1980).[5]

---

**4.** The Templetons admitted in their trial brief that they are not religiously opposed to private insurance. The Commissioner inferentially raised the argument that § 1402(g)(1) requires that an applicant be conscientiously opposed to both private and public insurance. This position is based on the language in that section stating that an applicant must be "an adherent of established tenets or teachings of such sect or division by reason of which he is *conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payment in the event of death . . . ."* The Commissioner also advanced several other grounds for disqualifying the petitioners from an exemption under both §§ 1402(e) and (g). We do not pass on any of these additional grounds because of our finding that the petitioners fail to qualify for either exemption for the reasons stated in the text.

**5.** There are decisions which have not considered the standing issue and thus have reached the merits of whether § 1402(g) violates the Establishment or Free Exercise Clause of the First Amendment. Those decisions have uniformly held that this section is not unconstitutional under either clause. *See Henson v. Commissioner,* 66 T.C. 835 (1976); *Palmer v. Commissioner,* 52 T.C. 310 (1969); *Jaggard v. C.I.R.,* 582 F.2d 1189 (8th Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1228, 59 L.Ed.2d 462 (1979); and *Varga v. United States,* 467 F.Supp. 1113 (D.Md.1979), *aff'd without opinion,* 618 F.2d 106 (4th Cir.1980).

Note also that the Supreme Court has recently held that imposition of social security taxes is not unconstitutional (under the Free Exercise Clause) as applied to persons who object to public insurance on religious grounds. *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).

Finally, the Templetons argue that §§ 1402(e) and (g) violate the Equal Protection Clause of the Fourteenth Amendment. Although by its terms the Fourteenth Amendment only applies to state, and not to federal, action, our circuit has held that the Equal Protection Clause of the Fourteenth Amendment is incorporated in the Due Process Clause of the Fifth Amendment and therefore is applicable to federal action. *See United States v. Falk,* 479 F.2d 616, 618 (7th Cir.1973).

Based on our research, the Supreme Court has never had an occasion to pass on the constitutionality of the questioned sections under the Fifth Amendment Due Process Clause. It has, however, discussed the taxing power of state and federal governments under the Due Process and Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. In *Carmichael v. Southern Coal Co.,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), the Supreme Court undertook a review of Alabama's Unemployment Compensation Act in light of the Fourteenth Amendment. With regard to a state's general taxing power the Court held:

"*First. Validity of the Tax* Qua *Tax.* It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. See *Bell's Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 237 [10 S.Ct. 533, 535, 33 L.Ed. 892]; *Lawrence v. State Tax Comm'n,* 286 U.S. 276, 284 [52 S.Ct. 556, 558, 76 L.Ed. 1102]. This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation.

\* \* \* \* \* \*

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subject to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

*Carmichael,* 301 U.S. at 509, 57 S.Ct. at 872 (emphasis original). In *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937) the Supreme Court discussed the validity of the tax imposed upon the employer by Title IX of the Social Security Act of August 14, 1935. With regard to the Fifth Amendment, the Court stated:

"The Fifth Amendment unlike the Fourteenth has no equal protection clause. . . . But even the states, though subject to such a clause, are not confined to a formula of rigid uniformity in framing measures of taxation. . . . They may tax some kinds of property at one rate, and others at another, and exempt others altogether. . . . They may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto. . . . If this latitude of judgment is lawful for the states, it is lawful, *a fortiori,* in legislation by the Congress, which is subject to restraints less narrow and confining."

*Steward Machine Co.,* 301 U.S. at 584, 57 S.Ct. at 889 (citations omitted). Thus, as *Carmichael* points out, if a taxing statute makes distinctions having a "rational basis," and thus is not arbitrary, it does not run afoul of the Fifth Amendment.

Upon examination, we find that neither § 1402(g) nor § 1402(e) violates the Fifth Amendment since both exemptions are rationally based and therefore do not arbitrarily discriminate against the Templetons. The House Report on § 1402(g) demonstrates Congress's intent to accommodate those individuals who sincerely believe that receipt of Social Security benefits would be irreconcilable with their religious convictions. However, the exemption was narrowly drawn because of the fear that a broadly written exemption could conceivably undermine the soundness of the Social Security program. *See* H.Rep. No. 213,

89th Cong., 1st Sess. 101 (1965–2 C.B. 739–40). Congress was also concerned with insuring the well-being of those individuals seeking the exemption as it included a provision that the exemption would not be granted absent a showing that the church, with which the individual was affiliated, made reasonable provisions for its dependent members. Thus, we hold that § 1402(g) does not arbitrarily discriminate against the Templetons. On the contrary, its requirements are rationally based and therefore § 1402(g) does not violate the Fifth Amendment. *Accord Ward v. C.I.R.,* 608 F.2d 599, 602 (5th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 272 (1980).

Section 1402(e) was likewise very narrowly drafted to exempt only that self-employment income obtained by a minister, priest, etc., through the exercise of his or her ministry. The justification for this exemption was Congress's recognition of church officials' fear that their participation as employers in the old age and survivors' insurance program "might interfere with the well-established principle of separation of church and state." *See* S.Rep. No. 1987, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News 1954, p. 3710 (1954–2 C.B. 695, 701). A tax based on compensation paid to a minister by his church or parish might defeat Congress's objective of accommodating this concern. Thus, there is also a rational basis for Congress's narrow delineation of this exemption and we therefore hold that § 1402(e) also does not violate the Fifth Amendment Due Process Clause. *See also Seward v. United States,* 515 F.Supp. 505 (D.Md.1981); and *Henson v. Commissioner,* 66 T.C. 835 (1976).

For the foregoing reasons, the decision of the tax court is AFFIRMED.

ESCHBACH, Circuit Judge, concurring.

As I read the Templetons' pro se brief, I believe that they contend that the Free Exercise Clause of the First Amendment creates a constitutionally required exemption from social security taxes for those religiously opposed to public-funded social insurance. They have standing to make this argument because if they are correct, then they do not owe a $227 deficiency. I would thus reach the merits of the claim and reject it in light of *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), which held that the Free Exercise Clause does not relieve taxpayers such as the Templetons from their obligations to pay social security taxes.