EDWARD J. WOLFRUM and SUSAN E. WOLFRUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolfrum v. Commissioner
Docket No. 7990-89
United States Tax Court
T.C. Memo 1991-370; 1991 Tax Ct. Memo LEXIS 419; 62 T.C.M. (CCH) 388; T.C.M. (RIA) 91370; August 7, 1991, Filed *419 Decision will be entered for the respondent. Edward J. Wolfrum, pro se. Mark I. Siegel, for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1984
$    902.57
1985
1,449.71
1986
1,085.55
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are whether either section 1402(g) or the United States Constitution exempts petitioners from payment of self-employment tax under section 1401. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Royal Oak, Michigan, at the time they filed their petition. When they were in their teens petitioners applied for and received social security numbers. Later in life, as a result of their studies of Revelation, Chapter 13 in particular, petitioners learned *420 of "the mark of the beast" and decided to end their participation in the social security program. On or about February 27, 1981, petitioners filed two Forms SSA-795, entitled "Statement of Claimant or Other Person" with the Social Security Administration in Royal Oak, Michigan. By filing these forms petitioners believed they could legally withdraw and rescind their participation in the social security system. On his Form SSA-795 Mr. Wolfrum certified the following: UNDER MY FIRST AMENDMENT PRIVILEGE I DO NOT WANT MY PERSON CONNECTED WITH ANY NUMBERING OR IDENTIFYING SYSTEM WHICH MIGHT AT SOME TIME, IN ANY WAY, BE USED AS, OR CONSIDERED TO BE A MARK COMMONLY KNOWN AS "THE MARK OF THE BEAST". I MORALLY CANNOT ACCEPT ANY MONEY OR SUPPORT THAT I DO NOT EARN FOR MYSELF AND PROVIDE FOR MYSELF UNLESS IT IS PROVIDED UNDER THE CHRISTIAN ETHIC, BY CHRISTIANS. I CANNOT MORALLY BE REQUIRED EITHER RELIGIOUSLY OR CONSTITUTIONALLY TO PROVIDE FOR THE CARE OR STEWARDSHIP OF OTHERS. TO DO SO WOULD VIOLATE MY PERSONAL RIGHT TO GIVE OF MYSELF DIRECTLY TO THOSE IN NEED, AND CIRCUMVENT THIS RIGHT AND ASSIGN IT TO GOVERNMENT. IT WOULD BE, IN FACT, ASSIGNING A RELIGIOUS DUTY UNDER MY CHRISTIAN *421 RESPONSIBILITY TO OTHERS/"THE SWEAT OF MY BROW IS MINE TO GIVE" AS OF SEPT 1975 I HELD THIS BELIEF BECAUSE OF MY RELIGIOUS AND MORAL CONVICTIONS. I HOWEVER WAS UNAWARE THAT I COULD TAKE ACTION REGARDING IT. NOW BEING AWARE OF THIS FACT I MUST MORALLY ACT UNDER MY RELIGIOUS CONVICTION TO DO SO AND ACT OF MY WILL PURSUANT THE BELIEFS I HAVE AT THIS TIME AND UNDER THE U.S. CONSTITUTION. I MUST WITHDRAW.
On her Form SSA-795 Mrs. Wolfrum certified the following: THAT UNDER MY FIRST AMENDMENT PRIVILEGE (FREEDOM OF RELIGION) I OBJECT TO THE NUMBERING SYSTEM INSTITUTED BY THE SOCIAL SECURITY DEPARTMENT. I DO NOT WISH TO HAVE NUMBERS OR ANY OTHER FORM OF IDENTIFICATION SYSTEM CONNECTED TO MY NAME WHICH * * * [portion illegible] AT SOME TIME, IN ANY WAY, BE USED AS A MARK COMMONLY KNOWN AS "THE MARK OF THE BEAST" (AS WRITTEN IN REVELATIONS FROM THE HOLY SCRIPTURES). CHRISTIAN LAW STATES THAT I (AS A TRUE CHRISTIAN) CANNOT ACCEPT MONEY OR ANY OTHER FORM OF EARTHLY SUPPORT THAT HAS NOT BEEN ACQUIRED BY MY OWN PHYSICAL LABOR. SINCE SOCIAL SECURITY IS ASSIGNING THIS RIGHT TO GOVERNMENT (MY RIGHT TO GIVE OF MY OWN SELF, TO SUPPORT MYSELF AND MY OWN FAMILY, AND HELP OTHERS *422 WITH MY CHRISTIAN ETHIC, IS DENIED BY THE SOCIAL SECURITY SYSTEM.
On August 29, 1984, petitioners wrote to the Social Security Administration office in Royal Oak, Michigan, to request a letter confirming that they had declined on religious grounds to participate in the social security system and could, therefore, legitimately refuse to supply a social security number where requested. On September 8, 1984, petitioners wrote to the Department of Health and Human Services in Washington, D.C. In this letter they stated that they had not yet received an answer to their letter of August 29, 1984, and requested assistance in obtaining a response. Petitioners received a letter dated December 7, 1984, from the Social Security Administration in response to their letter of September 8, 1984. The letter provided general advice to petitioners regarding their obligation to obtain and use a social security number and to pay social security tax on their wages and self-employment income. The letter also informed petitioners that once they received social security numbers, the Social Security Administration could not cancel or destroy the record of their numbers. The letter further advised *423 petitioners to contact the Internal Revenue Service (IRS) in regard to how they should proceed, since they, for religious reasons, did not wish to use social security numbers. At some point prior to the filing of petitioners' 1984 tax return, the IRS gave petitioners a taxpayer identification number (TIN or tin) to use for filing their returns. Petitioners timely filed their 1984, 1985, and 1986 joint Federal income tax returns. On a Schedule C attached to their 1984 return, petitioners reported $ 6,411.84 net profit from Mr. Wolfrum's audio engineering business. On line 2 of the Schedule SE attached to their 1984 return, petitioners reported that information regarding the net profit from Schedule C was not applicable; moreover petitioners reported a self-employment tax liability of "NONE" on line 14. In each instance where the 1984 return and the attached schedules required the entry of a social security number, petitioners crossed out "social security number" and entered "TIN" in its place. The "TIN" petitioners entered was 905 17 1063. On their 1985 return petitioners reported $ 11,658.98 net profit from Mr. Wolfrum's audio engineering business. On line 2 of the Schedule *424 SE attached to their 1985 return, petitioners again reported that information regarding the net profit from the audio engineering business was not applicable; moreover petitioners reported no self-employment tax liability on line 14. Petitioners entered "TIN 905171063" wherever identifying numbers were required on the return and attached schedules. On their 1986 return, petitioners reported $ 8,081.17 net profit from Mr. Wolfrum's audio engineering business. On line 2 of the attached Schedule SE, petitioners once again reported that information regarding the net profit from Mr. Wolfrum's business was not applicable; moreover petitioners reported no self-employment tax liability on line 14. Petitioners entered "tin 905171063" wherever identifying numbers were required on the return and attached schedules. Petitioners have never filed a Form 4029, "Application for Exemption from Social Security Taxes and Waiver of Benefits," in order to receive an exemption from payment of self-employment tax. Neither the Social Security Administration nor the IRS has any record of a Form 4029 on file for petitioners. In fact, it was during the audit that petitioners first learned of the need *425 to file a Form 4029. In the statutory notice of deficiency, dated February 2, 1989, respondent determined deficiencies in petitioners' 1984, 1985, and 1986 income tax of $ 902.57, $ 1,449.71, and $ 1,085.55, respectively. All of these deficiencies resulted from adjustments respondent made to Mr. Wolfrum's self-employment tax. In other words, the deficiencies in this case are deficiencies in self-employment tax. The parties have stipulated that petitioners' objections to paying self-employment tax are based on their Christian religious beliefs. Petitioners' objection to participation in the social security program is currently based on both their concept of "the mark of the beast" and their concept of "charity" or "sins against charity." Petitioners have no objection to using the taxpayer identification number respondent has assigned to them for filing purposes, but they believe that they will lose their souls by accepting social security numbers, which they regard as a "universal numerical identifier" and which they equate with "the mark of the beast." On the subject of charity, petitioners believe that it is their responsibility, not that of government, to care for themselves *426 and that they must stand on their own feet. Petitioners believe that if they fail, then they deserve to fail, and they should not burden anyone else. Petitioners believe that charity is a matter of free will, and that if government forces the social security tax on them, they will not be able to exercise their free will to use the fruits of their labor for charitable purposes as they see fit. Viewing this same concept from another standpoint, petitioners believe that by participating in the social security system they are shifting their charitable responsibilities to government, which they regard as another sin. Petitioners believe that it is the responsibility of all Christians to care for other members of the Christian faith. Petitioners are not members of any particular organized group, congregation, sect, or church that espouses their particular views; they are not members of any religious sect or division thereof that provides for its dependent members. Petitioners are not opposed to accepting the benefits of private insurance. OPINION Section 1401 requires taxpayers to pay a tax on their self-employment income. Section 1402(g) provides taxpayers conscientiously *427 opposed to accepting the benefits of any private or public insurance a religious exemption from payment of the self-employment tax if certain requirements are met. [1] Among these requirements the taxpayer seeking exemption must be a member of a recognized religious sect or division thereof and must adhere to the sect's or division's established teachings conscientiously opposing acceptance of the benefits of private or public insurance. Section 1.1402(h)-1(b), Income Tax Regs., requires taxpayers seeking the exemption to file Form 4029 with the IRS. Petitioners bear the burden of proving their entitlement to the exemption. Rule 142(a). *428 Initially, petitioners point to what they regard as fundamental fairness and argue that their withdrawal from the social security system, alone, relieves them from their obligation under section 1401 to make payments into the system. However, among other requirements, section 1402(g) also expressly obliges them to prove that they are conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care. Since Mr. Wolfrum expressly testified at trial that he did not base his objection to participation in the social security system on any opposition to insurance, petitioners have proven that they are not entitled to the exemption section 1402(g) provides. Also, neither the Social Security Administration nor the IRS has any record of a Form 4029 ever being filed for petitioners. [2] Moreover, Mr. Wolfrum testified that petitioners first learned on audit of the need to file a Form 4029, so it is clear that they never filed that form. Finally, the record contains no evidence of the religious sect or division *429 thereof in which petitioners claim membership. Petitioners in fact do not claim that they belong to a religious sect or division thereof that conscientiously opposes insurance or that makes provision for its dependent members. Petitioners simply do not qualify for the religious exemption provided by section 1402(g). Next, petitioners level several attacks on sections 1401 and 1402(g) on constitutional grounds. Petitioners argue that the Form 4029 filing requirement is invalid both because the favoritism it shows *430 religious sects opposed to public or private insurance violates the Establishment Clause of the First Amendment to the United States Constitution, and because requiring them to attest to beliefs they do not hold -- opposition to private or public insurance -- in order to qualify for the exemption places an unconstitutional burden on the free exercise of their religion under the Free Exercise Clause of that Amendment. Form 4029 is merely the procedure for ensuring that applicants for the exemption meet the statutory requirements of section 1402(g) before they are exempted from payment of self-employment tax under section 1401. This Court has previously held that section 1401 does not violate the Free Exercise Clause and section 1402(g) does not violate the Establishment Clause of the First Amendment. Randolph v. Commissioner, 74 T.C. 284, 290 (1980); Henson v. Commissioner, 66 T.C. 835, 838 (1976); Palmer v. Commissioner, 52 T.C. 310, 313-314 (1969). See also Jaggard v. Commissioner, 582 F.2d 1189, 1190 (8th Cir. 1978), affg. a Memorandum Opinion of this Court, cert. denied 440 U.S. 913, 59 L. Ed. 2d 462, 99 S. Ct. 1228 (1979). *431 Moreover, the United States Courts of Appeals for the Fifth, Seventh, and Eleventh Circuits have all held that a taxpayer seeking exemption from section 1401 does not have standing to attack section 1402(g) on First Amendment grounds, because the attack, if successful, would prevent the courts from granting the remedy the taxpayer seeks. Patterson v. Commissioner, 740 F.2d 927, 929-930 (11th Cir. 1984), affg. a Memorandum Opinion of this Court; Templeton v. Commissioner, 719 F.2d 1408, 1412 (7th Cir. 1983), affg. a Memorandum Opinion of this Court; Ward v. Commissioner, 608 F.2d 599, 601 (5th Cir. 1979), affg. a Memorandum Opinion of this Court, cert. denied 446 U.S. 918, 64 L. Ed. 2d 272, 100 S. Ct. 1851 (1980). See also Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 40-46, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976). Accordingly, petitioners have no standing to attack section 1402(g) on First Amendment grounds. In other words, if the statutory provision were declared unconstitutional, the exemption petitioners seek would be entirely void and petitioners would not achieve what they seek, which is to be included within that exemption. *432 Ward v. Commissioner, 608 F.2d at 601; Baylis v. Commissioner, T.C. Memo 1982-10. Moreover, apart from standing, both their Establishment Clause attack on section 1402(g) and their Free Exercise Clause attack on section 1401 fail under the Randolph-Henson-Palmer-Jaggard line of cases. See Ward v. Commissioner, 608 F.2d 599 at 601 n.4; Templeton v. Commissioner, 719 F.2d 1408 at 1412 n.5. Additionally, the Supreme Court has held that sections 1401 and 1402(g), as applied to an Amish employer, do not violate the Free Exercise Clause of the First Amendment, since the Federal Government's interest in the soundness of the social security system outweighs any interference with the employer's free exercise rights occasioned by his compulsory participation in the system. United States v. Lee, 455 U.S. 252, 257-262, 71 L. Ed. 2d 127, 102 S. Ct. 1051 (1982). The Supreme Court touched upon, and approved of, the narrowly confined religious exemption to section 1401 contained in section 1402(g), writing: Congress and the courts have been sensitive to the needs flowing from the Free Exercise Clause, but every person cannot *433 be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs. When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity. Granting an exemption from social security taxes to an employer operates to impose the employer's religious faith on the employees. Congress drew a line in § 1402(g), exempting the self-employed Amish but not all persons working for an Amish employer. The tax imposed on employers to support the social security system must be uniformly applicable to all, except as Congress provides explicitly otherwise. 12 [Emphasis supplied.] 12. We note that here the statute compels contributions to the system by way of taxes; it does not compel anyone to accept benefits. Indeed, it would be possible for an Amish member, upon qualifying for social security benefits, to receive and pass them along to an Amish fund having parallel objectives. It is not for us to speculate whether this would ease or mitigate the *434 perceived sin of participation.
United States v. Lee, 455 U.S. at 261-262. The Supreme Court's clear holding was that "Because the broad public interest in maintaining a sound tax system is of such high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax." 455 U.S. at 260. The concurring opinion noted that the Supreme Court's analysis "supports a holding that there is virtually no room for a 'constitutionally required exemption' on religious grounds from a valid tax law that is entirely neutral in its general application." 455 U.S. at 263. Here, petitioners have not shown that they are entitled to an exemption from the self-employment tax on either statutory or constitutional grounds. However, petitioners cite Stevens v. Berger, 428 F. Supp. 896 (E.D. N.Y. 1977), and Callahan v. Woods, 736 F.2d 1269 (9th Cir. 1984), in support of their argument that forced participation in the social security system violates their free exercise rights. The injury complained of in those cases was a Federal statutory requirement that the plaintiffs, *435 AFDC recipients, supply social security numbers for their dependent children in order to receive the childrens' benefits. Plaintiffs in both cases resisted the statutory requirement based on their sincere religious beliefs that the social security number might be "the mark of the beast" spoken of in Chapter 13 of the New Testament Book of Revelation. Applying a "least restrictive means" analysis, the courts in both cases sought to answer whether the statutory requirement violated plaintiffs' free exercise rights.[3] Neither Stevens nor Callahan discusses the constitutionality of forced participation in the social security system; rather, these cases involve the State's burden to prove that the requirement to furnish a social security number was the least restrictive means to achieve the public interest of maintaining the integrity of the public welfare system. In fact, the IRS system of providing a substitute taxpayer identification number was pointed to as the model solution to the dilemma. See Stevens v. Berger, 428 F. Supp. at 907. *436 Here, the IRS has accommodated petitioners' religious aversion to the use of social security numbers by supplying them with a taxpayer identification number, which petitioners used on their tax returns for the years before the Court. Mr. Wolfrum candidly testified as follows: I have no problem -- by the way, the Service did assign me a taxpayer identification number to file my return, and that's what I have been filing under. And I have no problem with that.
Moreover, since petitioners' grievance is with their forced participation in the social security system, and not with any denial of welfare benefits, Stevens v. Berger, supra, and Callahan v. Woods, supra, simply have no bearing on their claim. We also note that those cases are not the last word on the constitutionality of the social security number requirement under public welfare programs. In Bowen v. Roy, 476 U.S. 693, 90 L. Ed. 2d 735, 106 S. Ct. 2147 (1986), Part III of the plurality opinion limited the "least restrictive means" test to "governmental action or legislation that criminalizes religiously inspired activity or inescapably compels conduct that some find objectionable *437 for religious reasons." Bowen v. Roy, 476 U.S. at 706. Where the "government regulation indirectly and incidentally calls for a choice between securing a governmental benefit and adherence to religious beliefs * * *," the Government is entitled to "wide latitude;" and "Absent proof of an intent to discriminate against particular religious beliefs or against religion in general, the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." Bowen v. Roy, 476 U.S. at 706-708. The plurality opinion ultimately rejected the plaintiffs' Free Exercise Clause attack on the social security number requirement. However, Part III of the plurality opinion in Bowen v. Roy, supra, probably has no precedential value, and the Supreme Court seemed to reject it in Hobbie v. Unemployment Appeals Commission of Florida, 480 U.S. 136, 141, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987). Hobbie involved a Free Exercise attack on a Florida statute denying unemployment benefits to workers discharged for misconduct. *438 The State of Florida had denied the appellant unemployment benefits when her employer fired her for her refusal to work during her Sabbath. The court held that where the State's denial of a benefit hinges on conduct required by the individual's religion, a burden on the free exercise of religion exists; and that such an infringement on free exercise could only be justified if the State were to prove a compelling interest. In Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 1603, 108 L. Ed. 2d 876 (1990), however, the Supreme Court rejected the application of the compelling governmental interest analysis to measure the State's alleged violation of the Free Exercise Clause through a statute which denied unemployment benefits where employee "misconduct" -- in this case, criminal convictions for ingesting peyote in connection with a religious ceremony -- had resulted in dismissal. In Smith the Supreme Court seems to have adopted the views of Part III of Bowen v. Roy, but may have limited Smith's precedential value to cases involving an "'across-the-board' criminal prohibition on a particular form of conduct." Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 *439 S.Ct. at 1603. Whatever the proper analysis in cases requiring a social security number in order to obtain various welfare benefits may be, that problem simply is not involved in this tax case. Generally, religious beliefs provide no basis for refusing to pay a tax. United States v. Lee, 455 U.S. 252, 71 L. Ed. 2d 127, 102 S. Ct. 1051 (1982). We conclude that requiring petitioners to pay the self-employment tax does not violate their rights under either the Free Exercise Clause or the Establishment Clause of the First Amendment. Petitioners' final argument is that section 1401[4] "force[s] a condition of peonage upon [them], requiring [them] to contribute to the debt of others and additionally this requires [them] to support the debts of others who have chosen to participate in the Social Security System while the petitioners have clearly rescinded the provisions of program." Petitioners argue that this forced peonage is a violation of the Thirteenth Amendment to the United States Constitution and 42 U.S.C. sec. 1994.[5] Petitioners' argument is without merit. Riverfront Groves, Inc. v. Commissioner, 60 T.C. 435, 439-440 (1973). "If the requirements of the tax laws were *440 to be classed as servitude, they would not be the kind of involuntary servitude referred to in the Thirteenth Amendment." Porth v. Brodrick, 214 F.2d 925, 926 (10th Cir. 1954). Moreover, in Clyatt v. United States, 197 U.S. 207, 49 L. Ed. 726, 25 S. Ct. 429 (1905), the Supreme Court defined the term "peonage" for purposes of Rev. Stat. 1990, the predecessor of 42 U.S.C. sec. 1994, as follows: Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the mode of origin, but none in the character of the servitude. The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. But peonage, however created, is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the service is enforced. A clear distinction exists between peonage and the voluntary performance of labor or rendering of services in payment of a debt. In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an *441 action for damages for breach of that contract, can elect at any time to break it, and no law or force compels performance or a continuance of the service * * *
Clyatt v. United States, 197 U.S. at 215-216. *442 Clearly, the taxing statute does not place petitioners herein under a condition of compulsory service. Accordingly, while petitioners' contribution to the social security system may be involuntary, petitioners are not "peons," and section 1401 does not violate either the Thirteenth Amendment or 42 U.S.C. sec. 1994.[6]
To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Sec. 1402(g) provides: (g) Members of Certain Religious Faiths. -- (1) EXEMPTION. -- Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by -- (A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and (B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,
and only if the Secretary of Health and Human Services finds that -- (C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence, (D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and (E) such sect or division thereof has been in existence at all times since December 31, 1950.
An exemption may not be granted to any individual if any benefit or other payment referred to in subparagraph (B) became payable (or, but for section 203 or 222(b) of the Social Security Act, would have become payable) at or before the time of the filing of such waiver. (2) TIME FOR FILING APPLICATION. -- For purposes of this subsection, an application must be filed on or before the time prescribed for filing the return (including any extension thereof) for the first taxable year for which the individual has self-employment income (determined without regard to this subsection or subsection (c)(6)), except that an application filed after such date but on or before the last day of the third calendar month following the calendar month in which the taxpayer is first notified in writing by the Secretary that a timely application for an exemption from the tax imposed by this chapter has not been filed by him shall be deemed to be filed timely.↩
2. Petitioners appear to argue that section 1.1402(h)-1(b), Income Tax Regs.↩, is not a proper exercise of the Department of Treasury's rule-making authority because Form 4029 limits the religious exemption to taxpayers who are members of religious sects with established tenets opposing acceptance of private or public insurance benefits. Since this requirement is taken directly from the statutory language, the limitation is Congressionally mandated, and the regulation is a valid exercise in rule making.
3. In Stevens v. Berger, 428 F. Supp. 896 (E.D. N.Y. 1977), the district court held that the statutory requirement was not the least restrictive means to achieve the public interest in the integrity of the welfare system. 428 F. Supp. at 907-908. In Callahan v. Woods, 736 F.2d 1269↩ (9th Cir. 1984), the court of appeals could make no determination on the record before it, so it reversed the district court and remanded the case for further findings.
4. Actually, petitioners cite section 1.1402, Income Tax Regs.↩, as the source of their injury; but, again, their complaint is with the statute, not the Treasury regulations. 5. 42 U.S.C. sec. 1994 (1988) provides as follows: The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.↩
6. Petitioners also complain about a jeopardy assessment made against the National Commodity and Barter Association, which allegedly held certain property as an agent for petitioners. They seem to suggest that any self-employment tax they owe should be deemed to be already collected through that jeopardy assessment. The National Commodity and Barter Association is not before the Court in this case.↩