FISHER v FISHER

Docket No. 59552. Submitted April 20, 1982, at Detroit.—Decided
July 19, 1982. Leave denied, 414 Mich 919.

A default judgment of divorce dissolving the marriage of Peggy
A. Fisher and Ronald L. Fisher was entered in Wayne Circuit
Court in 1975. Plaintiff, Peggy A. Fisher, was awarded custody
of the couple's three minor children. In 1978, the court ordered
that custody of one of the children be changed to defendant. In
1981, the court, Joseph B. Sullivan, J., ordered that custody of
that child be returned to plaintiff. Defendant appeals. *Held:*

1. The defendant's exercise of his religious convictions as to
the rearing of his children may be subordinated to the state's
interest in the welfare of the minor children.

2. The trial court's denial of joint custody will not be dis-
turbed because the state's interest in protecting the best inter-
ests of children is of paramount importance and because an
award of joint custody would be injurious to the children in this
case.

3. The trial court properly declined to order plaintiff to
continue the Christian training to which defendant wishes the
children exposed. To grant defendant's request that the trial
court order that the children be provided Christian education
and religious training would be to entangle the court impermis-
sibly in religious matters.

4. Defendant's challenge to the state's involvement in the
matter of his obligation to financially support his children is
without merit.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation § 6.
[2-4] 16A Am Jur 2d, Constitutional Law §§ 471, 473, 477.
[5-7] 24 Am Jur 2d, Divorce and Separation § 783.
   42 Am Jur 2d, Infants § 43.
[8, 9] 24 Am Jur 2d, Divorce and Separation § 787.
   42 Am Jur 2d, Infants § 50.
Religion as factor in awarding custody of child. 66 ALR2d 1410.

1. DIVORCE — ECCLESIASTICAL UNION — CIVIL UNION.

A judgment of divorce extends only to the dissolution of the parties' civil contract of marriage; the status of their ecclesiastical union is in no way affected by the dissolution of their civil union.

2. CONSTITUTIONAL LAW — STATE ACTION — RELIGIOUS FREEDOM.

The state must show an overriding interest of the highest order to justify state action which results in a denial of a person's legitimate exercise of religious freedom.

3. CONSTITUTIONAL LAW — STATE ACTION — RELIGIOUS FREEDOM — COMPELLING STATE INTEREST.

A state's interest in some action which results in a loss of religious freedom is compelling when the end that is achieved is so vital to society that it essentially overrides the loss of the protected religious right.

4. CONSTITUTIONAL LAW — STATE ACTION — RELIGIOUS FREEDOM.

The state is permitted to intrude upon an individual's religious freedom, even where a compelling secular interest is shown, only if alternative, nonintrusive means are not available.

5. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD.

All disputes concerning custody of children have preference over other civil actions, and the controlling consideration in such disputes is the best interests of the children (MCL 722.25; MSA 25.312[5]).

6. PARENT AND CHILD — CHILD CUSTODY.

A court has no alternative but to determine which parent shall have sole custody of the minor children in a divorce action where two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children (MCL 722.26a; MSA 25.312[6a]).

7. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD.

The establishment of the right to child custody in one parent does not constitute a determination of the unfitness of the noncustodial parent but is rather the result of the court's considered evaluation of several diverse factors relevant to the best interests of the children (MCL 722.23; MSA 25.312[3]).

8. PARENT AND CHILD — CHILD CUSTODY — RELIGIOUS PRACTICES OF PARENTS.

A court must maintain its constitutionally mandated neutrality

with respect to the merits of the religious beliefs of the parties in considering which of two parents shall be awarded custody of their children; once the purely secular decision of custody is made, the court may not interfere with the religious practices of either the custodial or noncustodial parent unless those practices threaten the children's well-being.

9. PARENT AND CHILD — CHILD CUSTODY — RELIGIOUS PRACTICES OF PARENTS.

   A court may not order a custodial parent to educate his children in a particular faith nor may the court interfere with a noncustodial parent's right to pursue his or her religious activities and to involve the children in those activities during legal visitation periods.

Ronald L. Fisher, *in propria persona.*

Before: BRONSON, P.J., and D. F. WALSH and C. W. SIMON,* JJ.

D. F. WALSH, J. A default judgment of divorce dissolving the marriage of plaintiff, Peggy Fisher, and defendant, Ronald Fisher, was entered on July 18, 1975. Plaintiff was awarded custody of the parties' three minor children—Pamela, born April 29, 1964, Kenneth, born November 23, 1965, and Cynthia, born December 3, 1969. Defendant was granted rights of reasonable visitation with the children and was ordered to make weekly child support payments through the office of the Friend of the Court.

In 1978, defendant asked the court to grant him custody of the children. After an evidentiary hearing, the court ordered that custody of the parties' son, Kenneth, be changed to defendant but that custody of the two girls remain in plaintiff. Reasonable visitation rights were granted to both parties. Defendant's obligation to make support payments for Kenneth was cancelled.

* Circuit judge, sitting on the Court of Appeals by assignment.

On October 1, 1981, the court again modified the custody decree, ordering that custody of Kenneth return to plaintiff. Defendant was ordered to resume weekly support payments for Kenneth and was granted visitation rights with him. Defendant appeals *in propria persona.*

On appeal defendant raises several challenges to the lower court action. His challenges are based on his belief that the court has interfered with his constitutionally protected right to the free exercise of his religious beliefs. US Const, Am I, applicable to the states through selective incorporation into the Due Process Clause of the Fourteenth Amendment. *Gitlow v New York,* 268 US 652; 45 S Ct 625; 69 L Ed 1138 (1925). Defendant asks this Court (1) to declare that the state is powerless to dissolve the parties' ecclesiastical union; (2) to order joint custody of the children; (3) to order that the children be provided Christian education and religious training; and (4) to terminate defendant's legal obligation to contribute to the financial support of his children.

In challenging the state's authority to declare a dissolution of the parties' marriage, defendant mischaracterizes the nature of the state action. The court's power extends only to dissolution of the parties' civil contract of marriage. MCL 551.2; MSA 25.2. The status of their ecclesiastical union has in no way been affected by the dissolution of their civil union. See *Williams v Williams,* 543 P2d 1401 (Okla, 1975), *cert den* 426 US 901; 96 S Ct 2220; 48 L Ed 2d 826 (1976).

With respect to the court's action concerning the parties' children, defendant challenges the state's right to determine that one parent shall have sole custody of them. Defendant's sincere belief is that God owns all children and gives them to parents

at conception. For the state to alter this natural relationship by awarding sole custody to one parent constitutes, according to defendant, an impermissible burden on his constitutional right to exercise his religious convictions. Defendant also argues that his religious liberty has been violated by the court's refusal to order plaintiff to continue the children's Christian education and training. Defendant's honest belief is that Bible-based training and instruction must be an integral part of his children's daily lives. Finally, defendant challenges the state's right to order him to provide financial support for his children while at the same time excluding him from full participation in their education and religious training. According to defendant, both parents have the God-given right and responsibility to oversee their children's physical, educational, and religious needs. Defendant states that he is willing to continue to support his children financially but objects to the state's involvement in the matter of support.

The primacy of the First Amendment's guarantee of religious liberty is, of course, beyond debate. Also, well established is the corollary protection of the right of parents to direct the religious upbringing of their children. *Wisconsin v Yoder,* 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972).

When state action results in a denial of one's legitimate exercise of religious freedom, the state must show an overriding interest of the highest order to justify that action. *Id.* "A state's interest is compelling when the end that it achieves is so vital to society that it essentially overrides the loss of the protected religious right." *M I v A I,* 107 Misc 2d 663; 435 NYS2d 928 (1981). Even if a compelling secular interest is shown, the state will be permitted to intrude upon an individual's reli-

gious freedom only if alternative, nonintrusive means are not available. *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963).

In the instant case, both the sincerity of defendant's religious convictions and the burden placed on his exercise of those convictions by certain aspects of the operation of the child custody act are unquestionable. What is required, therefore, is a constitutional balancing test to determine if there is a compelling state interest to which defendant's full exercise of his religious convictions may be subordinated.

It is difficult to conceive of a more compelling or vital state interest than the welfare of minor children as it is affected by the dissolution of their parents' civil marriage union. The care and protection of children has long been a matter of utmost state concern. The state has declared that all disputes concerning custody of children shall have preference over other civil actions and that the controlling consideration in such disputes shall be the best interests of the children. MCL 722.25; MSA 25.312(5). That the best interests of children are potentially threatened in a divorce situation cannot be gainsaid. Those best interests include inherent rights to proper and necessary support and custody and general well-being, and are matters to which the court's protective function most vitally applies. See MCL 722.24; MSA 25.312(4).

Defendant asks the Court to order joint custody of the parties' children. In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. *Rolde v Rolde,* 425 NE2d 388 (Mass App,

1981). If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. MCL 722.26a; MSA 25.312(6a). The establishment of the right to custody in one parent does not constitute a determination of the unfitness of the noncustodial parent but is rather the result of the court's considered evaluation of several diverse factors relevant to the best interests of the children. MCL 722.23; MSA 25.312(3).

Under the circumstances of the instant case, an award of joint custody would be entirely inappropriate, and defendant does not suggest a permissible alternative to sole custody. Obvious reasons for the breakdown of the parties' marriage relationship were their conflicting views on religion and the effect of their religious beliefs on their child-rearing preferences. It is precisely because the parties cannot agree on basic child-rearing issues that the court was obligated to determine sole custody. As noted in *Hardisty v Hardisty,* 439 A2d 307, 313-314 (Conn, 1981):

"The same irreconcilable differences that led to the breakdown of the marriage often spill over into significantly divergent views about child rearing. In order to minimize the disruptive impact of such conflicts upon the children of the marriage, custody may be awarded to one parent alone * * *." (Citations omitted.)

Because the state's interest in protecting the best interests of children is of paramount importance and because an award of joint custody would, in our judgment, be injurious to the chil-

dren of the parties in this case, we decline to disturb the trial court's denial of joint custody.

In considering which of two parents shall be awarded custody of their children, the court must maintain its constitutionally mandated neutrality with respect to the merits of the religious beliefs of the parties. Once the purely secular decision of custody is made, the court may not interfere with the religious practices of either the custodial or noncustodial parent unless, of course, those practices threaten the children's well-being. The court may not order the custodial parent to educate the children in a particular faith, just as the noncustodial parent's right to pursue his or her religious activities and to involve the children in those activities during legal visitation periods cannot be violated. See *Hilley v Hilley,* 405 So 2d 708 (Ala, 1981), *Munoz v Munoz,* 79 Wash 2d 810; 489 P2d 1133 (1971). "The refusal to intervene in the absence of a showing of harm to the child reflects the protected nature of religious activities and expressions of belief, as well as the proscription against preferring one religion over another." *In re Marriage of Murga,* 103 Cal App 3d 498, 505; 163 Cal Rptr 79, 82 (1980).

In light of these fundamental First Amendment principles, the court properly declined to order that plaintiff continue the Christian training to which defendant wishes the children exposed. As defendant concedes, to grant his requested relief would be to entangle the court impermissibly in religious matters, the very transgression of which defendant now accuses the court.

The custody decree was based on the court's determination of the children's best interests. MCL 722.23; MSA 25.312(3). The decree was quite clearly not based on the court's consideration of

the merits of the religious beliefs of the parties. The parties were given full opportunity to present evidence in support of their respective positions. Finding no abuse of discretion, clear legal error or inappropriate findings of fact, we affirm the trial court's custody determination. MCL 722.28; MSA 25.312(8).

Defendant's challenge to the state's involvement in the matter of his obligation to support his children financially is without merit. Defendant's religious beliefs do not prohibit him from contributing to the financial support of his children. Compare *M I v A I, supra.* On the contrary, defendant considers himself morally obligated to provide for his children's physical needs. To the extent that defendant's attack on the order of support is based on his general aversion, on religious grounds, to the involvement of the state in matters affecting his relationship with his children, we find that the aforementioned vital interest of the state in the welfare of children is controlling.

The trial court's order returning custody of Kenneth to plaintiff, resuming weekly support payments for Kenneth, and granting defendant visitation rights is affirmed in all respects.