# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFREY FLINT,

      Plaintiff-Appellant,

v

JOY SWEETIN,

      Defendant-Appellee.

UNPUBLISHED
March 27, 2018

No. 340043
Genesee Circuit Court
LC No. 17-321598-DC

Before: M. J. KELLY, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Plaintiff ("Father") appeals as of right the trial court's final order awarding defendant ("Mother") sole legal custody and primary physical custody of the parties' minor child and granting Father (1) school-year parenting time that alternates weekly between Thursday after school to Monday morning and Thursday after school to Friday morning, and (2) summer parenting time that alternates one week on and one week off. We affirm.

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; see also *Brausch v Brausch*, 283 Mich App 339, 347; 770 NW2d 77 (2009). "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless they clearly preponderate in the opposite direction." *Id*.

"In a child custody context, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted). "Clear legal error occurs [w]hen a court incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). We review "a trial court's resolution of issues of law, including the interpretation of statutes and court rules," de novo. *Id*. In reviewing findings of fact, we defer to the trial court's determination of credibility. *Mogle v Scriver*, 241 Mich App 192, 201; 614 NW2d 696 (2000).

An established custodial environment is deemed to exist "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities

of life, and parental comfort," MCL 722.27(1)(c), and the environment is one "of significant duration 'in which the relationship between the custodian and the child is marked by qualities of security, stability, and permanence.' " *Mogle*, 241 Mich App at 197, quoting *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981). "The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c). A child may have an established custodial environment with one or both parents. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001).

A court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c); see also *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010). Thus, if a "proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests" according to the best-interests factors listed in MCL 722.23. *Pierron*, 486 Mich at 90, 92.

The clear-and-convincing standard applies if the child has an established custodial environment with both parents. *Foskett*, 247 Mich App at 8. Under such circumstances, "*neither* . . . established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the child[]'s best interests." *Id.*

MCL 722.26a(7)(b) defines "joint custody" as including a situation in which "parents shall share decision-making authority as to the important decisions affecting the welfare of the child." A trial court "shall determine whether joint custody is in the best interest of the child by considering" the best-interests factors set forth in MCL 722.23 and by considering "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1) and (b). If the parents cannot agree on essential decisions, joint legal custody is inappropriate. *Fisher v Fisher*, 118 Mich App 227, 233; 324 NW2d 582 (1982).

Father contends that he was seeking to maintain the existing custodial environment and that the trial court improperly placed the burden of proof on him to show by clear and convincing evidence that it should be maintained. The trial court made findings regarding the established custodial environment and the burden that had to be met to change the custodial environment. Specifically, the trial court stated, "a fair analysis leads me to believe that both [Mother and Father] had the established custodial environment. Therefore, the moving party must maintain the cause by clear and convincing evidence." Additionally, both parties submitted trial briefs and argued consistently with those briefs at trial, so the trial court was clearly informed that Mother was seeking sole legal and physical custody and Father was seeking joint legal and physical custody. It can be inferred by the trial court's statements regarding the burden of proof that it was applying the legal standards correctly. See *People v Sherman-Huffman*, 466 Mich 39, 43; 642 NW2d 339 (2002) ("we note the presumption that a trial judge in a bench trial knows the applicable law"). We are not persuaded by Father's argument that because Father was the party who initially filed a petition—a petition for *joint* custody—the trial court must have been referring to Father when it referred to "the moving party" and must have decided that Father needed to prove by clear and convincing evidence that the existing custodial environment should

be continued. There is no basis from which to conclude that the trial court was unaware that because there was an established custodial environment with both parents, any change to that environment had to be established by clear and convincing evidence.

Father, without challenging the findings regarding any specific best-interests factor,[1] argues for his second issue on appeal that "the proposed change in schools, of approximately 40 miles, does not change the custodial environment so as to require a change of custody in this case and requires no modification of parenting time." The trial court concluded that "it's not practical, in my opinion, for southern Saginaw County [where Father resides] and southern Genesee County [where the school is located] to work coherently and without causing significant inconvenience for the child and the parties . . . ." Accordingly, the court ruled that "during the school year" "custody [would] be maintained by [Mother]." Father argues that the trial court, instead of instituting the school-year alternate weekly parenting-time schedule consisting of "after school on Thursday until drop off at school on Monday morning" and "Thursday after school until drop off at school on Friday morning," should have granted Father's request for a year-round week-on/week-off schedule because the requested schedule would have added an allegedly negligible amount of transports each month. Specifically, Father states:

> This schedule [in the final order] provides that [Father] must transport [the child] to school approximately 6 times a month. In comparison, the week on/week off parenting time he requested would only require him to take [her] to school approximately 10 times a month. [Father] agrees that traveling 40 miles to take his precious daughter to school is somewhat inconvenient, but the reward of spending a whole week at a time with [her] greatly outweighs any inconvenience.

Father contends that the court committed a palpable abuse of discretion by instituting the school-year schedule. We disagree. Firstly, four additional trips each month is not particularly insignificant. In addition, the trial court was not, contrary to Father's implication, focusing solely on the convenience for Father when making its custody determination. The court also noted that it was favoring mother on two of the best-interests factors. Moreover, the trial court's remarks regarding the school had a reasonable basis: if the child is at school and becomes sick, for example, or needs to have something brought to her or to have an adult speak with a teacher, it complicates matters for her to be located 40 miles from the adult charged at the time with her supervision. Under all the circumstances, we find no abuse of discretion.[2]

---

[1] During the best-interests analysis, the trial court determined that Mother was favored with regard to factors (b) and (j); Father was not favored with regard to any factor; the parties were equal with regard to factors (a), (c), (d), (e), (g), and (k); and factors (f), (h), and (i) were inapplicable.

[2] Father cites *Pierron*, 486 Mich at 86-87, in support of his argument. The *Pierron* Court concluded that a change in schools whereby the children's new school would be 60 miles from the plaintiff's home did not affect the children's established custodial environment because the plaintiff would still be able to be involved with his children for weekday and school-related

Defendant's argument is not entirely clear, but he also seems to be suggesting that the court improperly changed the parenting-time schedule based on the distance from Father to the school. However, the temporary parenting-time order provided that during the school year, Father was to receive alternating "Thursday to Monday morning" and "Thursday to Friday at 6:00 p.m." parenting time, and during the summer, Father was to receive alternating weeks of parenting time. In the final order, Father again receives alternating weeks of parenting time during the summer and during the school year receives alternate weekly parenting time consisting of "after school on Thursday until drop off at school on Monday morning" and "Thursday after school until drop off at school on Friday morning." In its oral ruling the court expressed the desire to "continue with" the existing schedule. The final order is not worded exactly like the temporary order, but Father does not take issue with the wording. Instead, he seems to be mistaken in thinking that the court substantively changed the parenting-time schedule. At any rate, as we have explained, the trial court did not abuse its discretion in its physical-custody rulings.

Father lastly argues that the trial court erred in awarding sole legal custody to Mother. The court stated as follows regarding legal custody:

> I don't think the parents are going to be able to agree on [the education component]. Obviously, they weren't able to agree on it up to this point. . . . And as I said, based on a circumstance where we have a drop-off at a police station and a concerted inability to resolve this case, I just don't see the parties having the ability to communicate well enough to make good decisions on the major issues for [the child].

Father contends that the trial court's finding of a disagreement related to education was not supported by the facts. But testimony at the hearing clearly indicated that Father wanted the child to attend Birch Run Schools and Mother wanted the child to attend school in Fenton, where she works as a teacher. In addition, Mother testified that Father "refused" to "participate in a portion of getting [the child] in an early reading program." The trial court's finding regarding "the education component" was not against the great weight of the evidence.

Father also contends that the court essentially contradicted itself in making its legal-custody determination by referring to exchanges occurring at a police station. Mother wanted exchanges to occur at the police station because she alleged that Father had been "increasingly more aggressive" and had, at one exchange, pushed her against a car. Father contends that because the trial court, in ruling on physical custody, referred to this "pushing" allegation and explicitly found that domestic violence was *not* an issue in the case, it contradicted itself by referring to the drop-off issue during the findings regarding legal custody. We do not agree. That domestic violence did not occur is not incompatible with a finding that the parties could not

---

parenting time "one week out of every seven," as he had previously been. *Id*. at 87-89. Similar to the situation in *Pierron*, the parenting-time schedule ordered here is not significantly different from that previously in effect.

agree on certain issues and that their relationship was contentious. Mother wanted drop-offs to occur at the police station and Father wanted them to occur at the parties' residences. Mother clearly felt some level of animosity towards Father, whether actual physical violence had occurred or not. Father's argument is without merit. The trial court did not abuse its discretion by awarding Mother sole legal custody.

       Affirmed.

                          /s/ Michael J. Kelly
                          /s/ Patrick M. Meter