*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY JOY SINGH, formerly known as EMILY
JOY STINSON,

        Plaintiff-Appellee,

v

STANLEY MICHAEL STINSON,

        Defendant-Appellant.

UNPUBLISHED
November 13, 2024
9:55 AM

No. 369802
Livingston Circuit Court
LC No. 19-053976-DM

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Defendant, Stanley Michael Stinson, appeals as of right the trial court's February 1, 2024 order. The order denied defendant's objections to a referee's recommendation that plaintiff, Emily Joy Singh, formerly known as Emily Joy Stinson, be granted sole legal custody of the parties' minor children. In a separate February 1, 2024 order, the trial court adopted the referee's recommendation and granted plaintiff sole legal custody. We affirm.

## I. BACKGROUND

The parties, who married in 2011, share four children: SS, AS, MS, and VS. In November 2020, they divorced. The parties' consent judgment of divorce provided for joint legal custody. Plaintiff was granted sole physical custody. The parties agreed to a parenting-time schedule, with defendant having parenting time for four overnights every other week, from Thursday after school until Monday morning. After the divorce, the parties' relationship deteriorated further, and their communication worsened. This occurred despite the appointment of a parenting coordinator and the use of Our Family Wizard.[1]

---

[1] "Our Family Wizard is an electronic messaging program that a trial court may order parties to use to communicate regarding custody and parenting time matters when other methods of

-1-

In July 2022, plaintiff moved for sole legal custody, and defendant opposed the motion.[2] The parties stipulated that proper cause or a change of circumstances existed to revisit the custody order, and the matter proceeded to an evidentiary hearing before a referee. The evidentiary hearing continued over 12 hearing dates between December 2022 and October 2023. In relevant part, the parties testified about their difficulties coparenting during the proceedings and their different parenting styles. Testimony was also presented about the children's emotional issues, which stemmed from stress and anxiety. After the close of proofs, the referee held an *in camera* interview with the children that the referee used when deciding the children's best interests. In a November 2023 recommendation, the referee found an established custodial environment existed with both parties and plaintiff was required to establish that a change in custody was in the children's best interests by clear and convincing evidence. After considering the facts of the case and the best-interest factors contained in MCL 722.23, a vast majority of which weighed in favor of plaintiff, the referee recommended granting plaintiff sole legal custody.

Defendant objected to the referee's recommendation as to legal custody. After hearing oral arguments and conducting a de-novo review, the trial court rejected defendant's objections and adopted the referee's findings of fact and conclusions of law in two February 1, 2024 orders. This appeal followed.

## II. STANDARDS OF REVIEW

In custody cases, we apply three standards of review. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 3.

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, we review under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law.

---

communication have proved contentious or ineffective." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362488); slip op at 5 n 6.

[2] The parties also requested other relief relating to parenting time. However, this requested relief is not relevant to the issue raised on appeal.

[*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"These three deferential standards of review are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Sabatine v Sabatine*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165279); slip op at 5 (quotation marks and citation omitted). When reviewing a trial court's custody decision, a reviewing court must remember

that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Id*. at ___; slip op at 5-6 (quotation marks and citation omitted).]

## III. ANALYSIS

Defendant argues the trial court abused its discretion by granting plaintiff sole legal custody. We disagree.

"The Child Custody Act (CCA), MCL 722.21 *et seq*., governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 6 (quotation marks and citation omitted). "The purposes of the [CCA] . . . are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted).

The CCA "draws a distinction between physical custody and legal custody . . . ." *Id*. at 647. Specifically,

the Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child. Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare. [*Barretta*, ___ Mich App at ___; slip op at 7 (alteration, quotation marks, and citations omitted).]

The CCA defines joint legal custody as a circumstance where "the parents . . . share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). When a child resides with a parent, however, that parent retains the ability to decide routine matters regarding the child. MCL 722.26a(4). The legal standards for changing custody apply in the same manner for both legal and physical custody. *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362488); slip op at 16.

-3-

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). The threshold showing of proper cause or a change of circumstances must be established by a preponderance of the evidence. *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). "[A] proper cause or change in circumstance is a significant circumstance regarding one or more of the best-interest factors that has the potential for a significant effect on the well-being of the child or children whose custody is at issue." *Merecki*, 336 Mich App at 646 (footnote omitted).

"If the movant seeking to change custody . . . successfully establishes proper cause or a change of circumstances under the applicable legal framework, the trial court must then evaluate whether the proposed change is in the best interests of the child . . . ." *Lieberman*, 319 Mich App at 83. "Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020).

> An established custodial environment depends upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence.

> \* \* \*

> When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Sabatine*, ___ Mich at ___; slip op at 6-7 (quotation marks and citations omitted).

In this case, the parties stipulated that proper cause or a change of circumstances existed to modify the consent judgment of divorce. The matter proceeded to an evidentiary hearing, and defendant does not challenge the referee's finding that an established custodial environment existed with both parties. Defendant also does not challenge the referee's determination that, because granting plaintiff sole legal custody would change the established custodial environment, plaintiff was required to establish, by clear and convincing evidence, the change was in the

children's best interests. *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). Rather, defendant challenges the overall legal custody determination, which was adopted by the trial court.

Trial courts must determine whether joint custody is in a child's best interests by examining the best-interest factors stated under MCL 722.23, MCL 722.26a(1)(a), and by determining "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child," MCL 722.26a(1)(b). See also *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011). "[T]he trial court . . . must make specific findings of fact regarding each of the 12 statutory best-interest factors." *Quint*, ___ Mich App at ___; slip op at 4-5 (second alteration in original; quotation marks and citation omitted).

After considering the best-interest factors and the facts and circumstances of this case, the referee found it was in the children's best interests to grant plaintiff sole legal custody. The trial court adopted this finding, and defendant does not challenge any of the best-interest factors. Rather, defendant disagrees with the custody decision. According to defendant, the parties' disagreements were based on "routine matters that cannot form the basis for an award of sole legal custody, as each party is . . . required to make those decisions on their own[.]" We disagree.

This Court has held, "[i]f two equally capable parents whose . . . relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted). Additionally, when parents have a "deep-seated animosity" and "an irreconcilable divergence in their opinions about how to foster each child's well-being," joint custody ceases to be an option. *Wright v Wright*, 279 Mich App 291, 299-300; 761 NW2d 443 (2008), citing MCL 722.26a(1)(b). In *Kuebler*, ___ Mich App at ___; slip op at 29-30, this Court reversed a trial court's decision to grant joint legal custody where the evidence established the parties were unable "to communicate and make joint decisions regarding the children" and frequently required third-party and court involvement.

The trial court's decision to award plaintiff sole legal custody was not an abuse of discretion. The trial court recognized the parties' long-standing antagonistic relationship and the parties' inability or unwillingness to agree on major issues, including obtaining medical treatment for the children. While the children did not go without medical treatment, testimony supports the parties had difficulty agreeing on medical providers and scheduling medical appointments. According to plaintiff, defendant often delayed responding to her messages concerning the children's medical care, which resulted in delays in the children receiving medical treatment. Plaintiff's new husband witnessed her "struggle in trying to provide basic care for the [children] and trying to communicate the basic medical [and educational] needs of the children" to defendant.

While the children were healthy, the parties accused each other of not feeding the children appropriately. Specifically, defendant accused plaintiff of feeding the children rat feces, and plaintiff accused defendant of only feeding the children oatmeal. Plaintiff's accusation led to defendant photographing and weighing the children at the location of the parenting-time exchanges so he could guard himself against plaintiff's accusations. There were concerns this negatively impacted the children, and the parenting coordinator made recommendations to resolve the issue of defendant photographing the children. Before the parenting coordinator could assist the parties

with resolving additional issues, he withdrew as parenting coordinator because defendant filed a complaint against him with the Michigan Attorney Grievance Commission.[3]

While the parties agreed the children would be raised in the Christian faith, plaintiff disagreed with defendant's approach to leading a Christian lifestyle. Indeed, she believed defendant was "extreme" and engaged in "spiritual manipulation." Plaintiff was not as rigid, and she chose to implement spirituality in her day-to-day life with the children. Defendant introduced evidence plaintiff did not bring the children to church or Sunday school on a regular basis, evidencing his disapproval of her handling of the children's upbringing. Defendant also did not believe plaintiff was moral, and he accused her of adultery.

Defendant also repeatedly accused the children's maternal grandfather and plaintiff's new husband of "grooming" the children and being inappropriate with them. Defendant reported these allegations, as well as allegations that plaintiff's new husband was not legally in the United States, to the United States Immigration and Customs Enforcement (ICE). Child Protective Services (CPS) was involved multiple times during the divorce and child custody proceedings because of child abuse allegations. None of these allegations were substantiated. Thus, the facts belie defendant's assertion the parties merely "have taken different routes to [implementing] th[e] decision [to raise their children in the Christian faith] in their own homes." Indeed, the parties have fundamental issues with the manner in which the other parent practices Christianity and lives their everyday life.

The parties also accused each other of failing to properly dress the children for school, and plaintiff did not trust defendant to purchase school supplies for the children. A significant amount of time was spent addressing these issues during the hearing. While defendant is correct each parent was entitled to "decide all routine matters concerning" the children when in their care, MCL 722.26a(4), "[i]n order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making," *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted). The parties were unwilling to cooperate with each other, which was to the detriment of the children.

There is no indication the parties will be able to communicate effectively in the future or work together for the children's benefit. Indeed, there was a period of time when the parties were unable to communicate because a no-contact order was in place. The no-contact order was entered because defendant put trackers on a vehicle that was driven primarily by plaintiff during the divorce proceedings. Defendant acknowledged the parties' communication disintegrated further after this occurred. Nonetheless, defendant never apologized to plaintiff for his actions. The parties briefly used the parenting coordinator to help them communicate about issues involving the children, but he withdrew because of defendant's actions. After the no-contact order lifted, the parties communicated through Our Family Wizard, which is designed to foster healthy communication. Yet, both parties used Our Family Wizard in an inappropriate manner, and each claimed that the other used accusatory or inappropriate language.

---

[3] No action was taken against the parenting coordinator, who was a licensed Michigan attorney.

Although defendant opined the parties could agree on major issues in the future, this is highly unlikely. The parties rarely saw each other face-to-face, and defendant acknowledged that he did not want to sit with plaintiff at the children's events. Defendant also recorded the children in an obvious manner when they interacted with plaintiff at school events. While defendant argues on appeal there were "reasonable alternatives for more removed communication between the parties," referencing *Bofysil*, 332 Mich App at 249, where the parents agreed to communicate about issues relevant to their child in a notebook. However, as already stated, the parties used Our Family Wizard for a majority of the proceedings to no avail. They also had a parenting coordinator for a period of time before he resigned because of defendant's actions. Plaintiff testified communication was difficult even when the parenting coordinator was in place. According to plaintiff, defendant retaliates against others and often "tries to get the person he's unhappy with in trouble or cause them to, to leave the situation."

Defendant believed parents should make parenting decisions together. However, according to defendant, for parents to cooperate on decisions regarding their children they had to be "rational." Defendant testified plaintiff was not rational. Defendant would work with a mediator, but it would have to be "outside of Livingston County" to be an "unbiased party." Defendant admitted he did not trust plaintiff. When asked if he and plaintiff could "effectively make decisions," like choosing medical personnel without a third party, defendant stated: "I think it could happen. It could, but that would be a, a joint effort." Defendant agreed that plaintiff was "the barrier for a successful discussion" on issues concerning the children's doctors and education. Indeed, defendant believed plaintiff wanted the children to be ill and diagnosed with different ailments and disorders for her own benefit. Defendant did not "usually" trust plaintiff to make medical decisions for the children. When asked how he could coparent with someone he rarely saw and did not trust, defendant stated: "I'm not sure how to answer that question."

Plaintiff described communicating with defendant as "an ongoing battle . . . ." She noted it was rarely "straightforward." Plaintiff also noted "there was no ability to resolve many of these issues unless [they] involved attorneys . . . ." Plaintiff did not believe counseling or working with a new parenting coordinator would help the situation. She believed the parties required court involvement and opined granting her sole legal custody would reduce "the impact on the children . . . ."

Defendant argues granting plaintiff sole legal custody would not resolve the parties' communication issues. While this reality was acknowledged by the referee, we assume the referee hoped, in rendering this decision, the placement of authority for major decisions involving the children with plaintiff would preclude the necessity of certain communications between the parties, which historically have been negative and contentious. The trial court adopted the referee's recommendation. By granting plaintiff sole legal custody and reducing the need for the parties to communicate, some of the ongoing tensions could be alleviated. This ruling does not negate defendant's ability to "decide all routine matters concerning the child[ren]" while in his custody, in accordance with MCL 722.26a(4).

Additionally, it is clear that retaining joint legal custody was improper because it is likely defendant will not make decisions in accordance with the children's best interests. At times, he did not express concern about the children's issues, such as VS's self-stimulation, encopresis, and speech issues. Defendant disapproved of the children's pediatrician, with whom the children had

a long-standing relationship. Plaintiff complained defendant, who is a nurse, sometimes took the children's medical care "into his own hands."

The children required therapy to address their emotional issues. The parenting coordinator assisted the parties with agreeing on SS's therapist at the beginning of the proceedings. The parties initially had issues with scheduling counseling because of defendant's objections and inaction. Evidence supports the children did not feel comfortable expressing their feelings in front of defendant, and defendant's testimony establishes he would not accept this reality or do anything to change it. Defendant did not trust MS's and VS's therapist.

While plaintiff is not a perfect parent, the evidence establishes the children were doing well and developing in her care. Plaintiff involved the children in extracurricular activities and was involved in their education. In contrast, defendant did not put the children's needs first, which is evidenced by his decision to record the children's medical appointments. Indeed, defendant did so to guard himself against future accusations. Plaintiff was concerned the providers would refuse to see the children in the future because of defendant's behavior. Nonetheless, he persisted and defended his actions at the evidentiary hearing. Considering all the evidence, it is clear plaintiff is more likely to evaluate and consider the needs of the children. In contrast, defendant has a more egocentric focus and considers his desires before the children's needs.

In sum, joint custody would cause the children further harm and would not be in their best interests given the parties' long-standing acrimonious relationship. See *Fisher v Fisher*, 118 Mich App 227, 233-234; 324 NW2d 582 (1982) (declining "to disturb the trial court's denial of joint custody" where "an award of joint custody would . . . be injurious to the children").[4] Unlike cases involving termination of parental rights, which require the balancing of the best interests of the children with a parent's constitutional rights, the CCA requires trial courts to focus on the children " 'to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes.' " *Lieberman*, 319 Mich App at 78, quoting *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). See also *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) ("Above all, custody disputes are to be resolved in the child's best interests.").

## IV. CONCLUSION

Plaintiff established by clear and convincing evidence it was in the children's best interests to grant her sole legal custody. The trial court's decision to award plaintiff sole legal custody does not constitute an abuse of discretion. We affirm.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica

---

[4] "Although cases decided before November 1, 1990 are not binding precedent, they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).