*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRITTNEY GOLDEN,

        Plaintiff-Appellee,

v

HASHIM WARD,

        Defendant-Appellant.

UNPUBLISHED
June 2, 2022

Nos. 357875; 358428
Wayne Circuit Court
Family Division
LC No. 19-162355-DP

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In Docket No. 357875, defendant Hashim Ward appeals the trial court's June 29, 2021 opinion and order, wherein the trial court estimated defendant's income for purposes of child support. In Docket No. 358428, defendant appeals the trial court's September 1, 2021 order, which granted plaintiff Brittney Golden sole custody of the parties' children and ordered defendant to pay $1,896 each month in child support. We affirm the trial court's custody decision and remand for further analysis with respect to the issue of child support.

## I. BACKGROUND

In 2010, the parties began a romantic relationship, but they never married. Over the course of the relationship, the parties had three children together. Defendant refused to sign the children's birth certificates. The parties ended their relationship in 2017 or 2018, and plaintiff and the children moved out of the home that the parties and the children had shared. After the relationship ended, plaintiff primarily cared for the children, but she permitted defendant to have contact with them.

In May 2019, the Department of Health and Human Services filed paternity complaints with the assistance of plaintiff and requested that a judgment of filiation be entered.[1] The complaints alleged that defendant was the biological father of the children and that he had the ability to provide support to the children. Defendant acknowledged paternity over the children

---

[1] Three separate complaints were filed. The matters were later consolidated.

and requested that the trial court grant joint legal and physical custody, award equal parenting time, and calculate child support in accordance with the Michigan Child Support Formula (MCSF).

In October 2019, a referee entered an interim order, which granted plaintiff sole physical custody and granted the parties joint legal custody. Defendant, who claimed that he was unemployed, was granted parenting time and was ordered to pay a modest amount in child support. After a three-day evidentiary hearing that took place between January and March 2021, the trial court awarded plaintiff sole custody after weighing the best-interest factors. Defendant was awarded parenting time. The trial court estimated defendant's 2020 income to be $60,000, and defendant was ordered to pay $1,896 each month in child support. These appeals followed.[2]

## II. CUSTODY

Defendant argues that the trial court's decision to award sole custody to plaintiff was in error. We disagree.

## A. STANDARDS OF REVIEW

"All custody orders must be affirmed on appeal unless the [trial] court's findings were against the great weight of the evidence, the [trial] court committed a palpable abuse of discretion, or the [trial] court made a clear legal error on a major issue." *Lieberman v Orr*, 319 Mich App 68, 76-77; 900 NW2d 130 (2017) (quotation marks and citations omitted). A finding is against the great weight of the evidence when "the evidence clearly preponderates in the opposite direction." *Id*. at 77 (quotation marks and citation omitted). An abuse of discretion occurs when a trial court's decision "is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (quotation marks and citations omitted). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Lieberman*, 319 Mich App at 77 (quotation marks and citation omitted). We defer to the trial court concerning issues of credibility. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

## B. ANALYSIS

When parents are unable to cooperate and make joint decisions, a trial court may be required to grant sole custody to one parent:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision making authority and discipline—and they must be willing to cooperate with each other in joint decision making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent

---

[2] The appeals were later consolidated. *Golden v Ward*, unpublished order of the Court of Appeals, entered January 4, 2022 (Docket No. 357875).

shall have sole custody of the children. [*Fisher v Fisher*, 118 Mich App 227, 232-233; 324 NW2d 582 (1982) (citations omitted).]

In this case, the record does not support that the parties would be able to work together for the overall best interests of the children. Defendant engaged in a variety of troubling behaviors during the proceeding, which included assaulting and belittling plaintiff in the presence of the children, taking HW out of state for several days without permission, and removing AW from school for undisclosed reasons. Despite plaintiff's efforts, defendant refused to co-parent with plaintiff and attempted to undermine her and turn the children against her. In January 2021, defendant turned off the chat application that the trial court ordered the parties to use to communicate about the children. Defendant also refused to comply with court orders and was evasive during the hearing despite receiving multiple warnings from the trial court. This behavior demonstrates defendant's general unwillingness to be cooperative. In contrast, there is no indication that plaintiff sought or would seek to undermine the children's relationship with defendant. Indeed, the record supports that plaintiff attempted to foster defendant's relationship with the children despite her fear of defendant. Thus, the evidence overwhelmingly establishes that the parties were unable to cooperate and generally agree on important decisions affecting the welfare of the children.

However, the parents' ability to cooperate is only one factor for a trial court to consider in determining whether to grant or deny a request for joint custody. *Shulick v Richards*, 273 Mich App 320, 326; 729 NW2d 533 (2006). The trial court must also consider the best-interest factors. *Id*. The Child Custody Act sets forth the relevant criteria for determining a child's best interests:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

Defendant only meaningfully challenges the trial court's findings with respect to factors (c), (d), (h) and (k).[3]

With respect to factor (c), "[t]he capacity and disposition of the parties involved to provide the child[ren] with food, clothing, medical care or other remedial care," the children were in plaintiff's care the majority of the time during the proceeding. Although defendant was granted parenting time every other weekend, he often failed to exercise his parenting time or was late to pick up the children. The record supports that plaintiff was employed and provided the children with food and clothing when they were in her care. Despite the fact that defendant provided for the family during his relationship with plaintiff, plaintiff testified that defendant claimed that he had no income after the action was filed and rarely asked if the children needed any material items. Defendant also failed to attend any of the children's medical appointments during the proceeding. Plaintiff testified that she attended to the children's medical needs, and she indicated that the children did not have medical issues.[4]

---

[3] Although defendant argues that "[t]he trial court's finding on best interest factor[ ] (b) . . . was against the great weight of the evidence," he does not provide any authority or meaningful argument. Instead, defendant merely makes an allegation of error. Defendant's cursory treatment of this issue renders it abandoned. *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019) (A party "may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.") (quotation marks and citation omitted). Consequently, we need not consider it. To the extent that we have considered it, we conclude that the trial court's determination that this factor "slightly" favored plaintiff was not against the great weight of the evidence.

[4] Although testimony was presented to support that defendant was concerned about AW's weight, plaintiff denied that AW was obese and noted that a doctor had confirmed that she was "healthy." Nonetheless, defendant "fat shamed" eight-year-old AW, which made her "[v]ery sad."

-4-

Although defendant argues that plaintiff prevented him from being involved in the children's lives after their relationship ended, plaintiff testified that she provided defendant with opportunities to see the children on a consistent basis. According to plaintiff, defendant rarely saw the children and did not involve himself in their education or medical care. The trial court clearly found plaintiff's testimony to be credible. Thus, the record supports that defendant lacked the disposition to provide for the children's material and medical needs. See *Berger*, 277 Mich App at 712 ("Factor c . . . is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs."). The trial court's finding that factor (c) favored plaintiff was not against the great weight of the evidence.

Factor (d) concerns "[t]he length of time the child[ren] ha[ve] lived in a stable, satisfactory environment, and the desirability of maintaining continuity." Plaintiff and the children lived in a four-bedroom home, and the children had their own beds. Plaintiff's mother assisted plaintiff with caring for the children, and there is no indication that plaintiff was unable or unwilling to continue to provide the children with a stable home environment. In contrast, defendant lived a somewhat transient lifestyle. For instance, defendant had stable housing in Detroit, but often traveled to Florida to care for his mother. Defendant testified that he "tr[ies]" to go to Florida "at least twice a month" for four or five days "at a time." Defendant's trips to Florida often interfered with his parenting time with the children. Given this evidence, the trial court's finding that factor (d) favored plaintiff was not against the great weight of the evidence.

With respect to factor (h), "[t]he home, school, and community record of the child[ren]," plaintiff testified that the children were doing "great" in school. Plaintiff also testified at the January 2021 hearing that defendant had never participated in the children's virtual learning, had not assisted the children with homework since 2019, and did not communicate with the children's teachers. Importantly, in September 2020, plaintiff informed defendant before his weekend parenting time that the children had to complete homework during the weekend. Defendant refused to assist the children with their homework because he "only gets 48 hours with" them. Plaintiff nonetheless packed the children's homework in the hope that defendant would help them complete it, but it was unfinished when the children returned to her from defendant's care. Given defendant's lack of involvement in the children's education, the trial court's finding that factor (h) favored plaintiff was not against the great weight of the evidence.

Factor (k) concerns "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child[ren]." Plaintiff testified that defendant "often" physically abused her during their relationship. Plaintiff also testified that the children witnessed the abuse on a weekly basis and would attempt to protect plaintiff. After plaintiff and the children moved out of the home that they shared with defendant, defendant's abuse continued. The abuse consisted of defendant calling plaintiff derogatory names in the presence of the children, physically assaulting plaintiff in the presence of the children, and sending plaintiff threatening text messages and e-mails. Defendant would also unexpectedly appear at plaintiff's home, which frightened plaintiff. In June 2020, defendant left the state with HW and refused to return him to plaintiff's care for five or six days despite knowing that plaintiff was distressed. While defendant denied that he had ever assaulted plaintiff, the trial court clearly found defendant's testimony to be incredible. Additionally, the fact that defendant has never been charged with domestic violence is not dispositive. The trial court's finding that factor (k) favored plaintiff was not against the great weight of the evidence.

In light of our conclusions that the trial court's findings on factors (c), (d), (h) and (k) were not clearly erroneous, there is no basis for us to conclude that the trial court abused its discretion by awarding plaintiff sole custody. This is especially the case when considering that the trial court did not conclude that any of the factors weighed in favor of defendant.[5] Although defendant argues that the trial court failed to give factors (a), (e), (f), and (g) sufficient weight, "[a] court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts "are duty-bound to examine all the criteria in the ultimate light of the child[ren's] best interests." *Id.* (quotation marks and citation omitted).

Given that the parties were unable to cooperate and agree generally concerning important decisions affecting the welfare of their children, and given the best-interest factors, we conclude that the trial court did not abuse its discretion by awarding plaintiff sole custody. See *Fisher*, 118 Mich App at 233-234 (declining "to disturb the trial court's denial of joint custody" where "an award of joint custody would . . . be injurious to the children").[6]

## III. CHILD-SUPPORT AWARD

Defendant next argues that the trial court's child-support award was erroneous. We conclude that it is necessary to remand to the trial court for further consideration of this issue.

## A. STANDARDS OF REVIEW

"Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006). "We review a trial court's finding of facts underlying an award of child support for clear error." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). "A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made. . . ." *Id.* (alteration in original; quotation marks and citation omitted).

## B. ANALYSIS

To determine the appropriate amount of child support, a trial court must comply with the MCSF Manual or provide reasons for failing to do so. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). "[T]he first step in determining a child-support award is to ascertain

---

[5] The trial court concluded that factors (a), (e), (f), and (g) favored both parties equally and that factor (j) favored neither parent. The trial court did not indicate which party factor (i) favored, but the court interviewed the two oldest children on February 22, 2021, and it considered their preferences.

[6] We note that defendant argues that the trial court improperly determined that the children had an established custodial environment with plaintiff. However, defendant raised this argument for the first time in his reply brief. Consequently, we will not consider it. See *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003).

each parent's net income by considering all sources of income." *Id*. In this case, the trial court found as follows with respect to child support:

> Defendant . . . has failed to provide the court or plaintiff with sufficient documentation to determine his income. Therefore, the court will have to establish his income based upon the documentations [sic] and testimony provided.
>
> (Plaintiff/Mother's income is W-2 income. . . .)
>
> Defendant . . . claims to be unemployed and has failed to truthfully disclose his financial transactions related to buying and selling homes. . . .
>
> Based upon all of the documentation submitted to the court[,] the court estimates defendant's 2020 income as follows:
>
> | | |
> |---|---|
> | Unemployment | $19,488 |
> | Income from Home Rehabilitation | $40,000 |
> | | $59,488 |

The trial court then concluded that defendant's "total estimated net income for 2020 is $60,000" and ordered defendant to pay $1,896 each month in child support.

Although defendant's 2020 tax documents support that he received $19,488 in unemployment benefits in 2020, the trial court failed to explain how it determined that defendant earned $40,000 from "Home Rehabilitation." Given the inadequacy of the trial court's analysis and lack of factual findings, we cannot be certain of the trial court's reasoning. Accordingly, we must remand for further consideration of the child-support issue. To the extent that the trial court intended to impute income to defendant, the trial court must expressly consider the factors outlined in 2021 MCSF 2.01(G)(2) on remand. The remainder of defendant's arguments on appeal concerning the child-support issue can also be addressed on remand.

We affirm the trial court's custody decision and remand for further consideration on the child-support issue. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel